UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| SHANE VANOVER and AUSTEN ROBERTS on Behalf of Themselves and Others Similarly Situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>UNIFIED DOOR COMPANIES, L.L.C., and UNIFIED DOOR COMPANIES, L.L.C. D/B/A HICKLIN DOOR SERVICES,<br><br>    Defendants. | Case No. 4:25-cv-00133-SHL-SBJ<br><br>PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND MEMORANDUM OF LAW IN SUPPORT THEREOF |

**PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

TABLE OF CONTENTS

I.   INTRODUCTION...........................................................................................................2
II.   DEFENDANTS' LOCATIONS AND POLICY..............................................................3
III.   ARGUMENT...................................................................................................................5
   A.   THE COURT MAY ISSUE NOTICE UPON A MODEST FACTUAL SHOWING THAT SIMILARLY SITUATED CLASS MEMBERS EXIST. .........................................................5
   B.   THE COURT SHOULD AUTHORIZE NOTICE BECAUSE PLAINTIFFS HAVE MADE A SUFFICIENT SHOWING THAT SIMILARLY SITUATED COLLECTIVE ACTION MEMBERS EXIST...................................................................................................................7
   C.   EVEN THOUGH QUESTIONS REGARDING THE MERITS ARE IRRELEVANT AT THIS STAGE, PLAINTIFFS HAVE MADE SUFFICIENT PRELIMINARY SHOWING THAT THEY WERE NOT PAID FOR WORKING TIME IN VIOLATION OF THE FLSA. ...............10
   D.  PLAINTIFFS' PROPOSED FORM AND METHODS OF NOTICE ARE PROPER.............12
IV.   CONCLUSION.............................................................................................................17

I.   INTRODUCTION

Plaintiffs Shane Vanover and Austen Roberts have worked for Defendants Unified Door Companies, L.L.C. ("Unified Door") and Unified Door Companies, L.L.C. d/b/a Hicklin Door Services ("Hicklin") as hourly-non exempt employees. Vanover Aff. ¶ 1; Roberts Aff. ¶ 1. They provided services installing garage doors and were paid at an hourly rate. Vanover Aff. ¶ 2; Roberts Aff. ¶ 2. Plaintiffs were non-office employees, meaning their work required them to be on-site at customer locations installing doors, and transporting between job sites. Vanover Aff. ¶ 2; Roberts Aff. ¶ 2.

Because Plaintiffs' work location changed based on the installation location, Defendants provided Plaintiffs iPads or electronic tablets that Plaintiffs used to track their work time. Vanover Aff. ¶ 4; Austen Aff. ¶ 4; Defs.' Answer ¶ 19. There was a box on the "timesheet entry" tab on the tablet software labeled "NO LUNCH." Ex. A; Vanover Aff. ¶ 4; Austen Aff. ¶ 4. Because of the nature their work, Plaintiffs often did not take a lunch break at all during work. On days they did not take a lunch break Plaintiffs would check the "NO LUNCH" box to inform Defendants that they did not take a lunch break that day. Vanover Aff. ¶ 4; Austen Aff. ¶ 4.

However, Defendants maintained and continue to maintain a policy of deducting 30 minutes per workday from "non-office" employees' work hours even if the employee did not take a 30-minute unpaid break for lunch. Ex. B; Defs.'s Answer ¶ 28–31. Defendants admit the "NO LUNCH" box existed on the tablet software. Defs.'s Answer ¶ 25. Defendants admit they utilized the electronic tablet data to calculate employee paychecks. Defs.' Answer ¶ 27. When Plaintiffs received their paychecks a 30-minute lunch break per workday was deducted from Plaintiffs' pay even for days that the Plaintiffs did not take lunch and informed Defendants that they did not take a lunch by checking the "NO LUNCH" box on Defendants' iPads. Vanover

Aff. ¶ 5; Austen Aff. ¶ 5. It would seem Defendants simply ignored the tablet data showing when employees did not take a lunch and deducted 30 minutes from that workday anyway.

Plaintiffs claim that Defendants' policy and practice of ignoring Plaintiffs' reports that they did not take a lunch and deducting 30 minutes per workday from Plaintiffs' pay whether they actually took a 30 minute break or not violates the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 206 and § 207 by failing to pay employees for all hours worked and failing to pay overtime for hours worked over 40 per week. Under the FLSA an employer is required to pay non-exempt employees their regular rate of pay and any accompanying fringe benefits for all hours of work performed up to 40 hours per week and one and a half times their regular hourly rate of pay and accompanying fringe benefits for all hours worked in excess of 40 per week. 29 U.S.C. § 207(a). Plaintiffs now seek leave to issue notice pursuant to § 216(b) of the FLSA to all non-office FLSA non-exempt employees who worked for Defendants at any location during the past three years.

For the reasons set forth below, Plaintiff hereby moves this Court for an order conditionally certifying and allowing judicial notice of this action to be sent to potential opt-in plaintiffs informing them of their right to opt-in to this case under the FLSA. Specifically, Plaintiffs seek conditional certification of the following class:

> All individuals who worked for Defendants at all locations since April 10, 2022, whom Defendants classified as "non-office" employees and as "non-exempt" for overtime purposes.

II.   DEFENDANTS' LOCATIONS AND POLICY

Defendant Hicklin operates a facility located at 1672 NE 53rd Street in Des Moines, Iowa. During their employment with Defendants Plaintiffs were based out of that Des Moines facility. Vanover Aff. ¶ 1; Austen Aff. ¶ 1. However, Defendant Unified Door operates multiple other facilities in Iowa, Nebraska, and South Dakota that are engaged in garage door repair,

3

installation, and maintenance, just like the services provided at the Des Moines facility. Defs.' Answer ¶ 7–10; Ex. C–G. Unified Door employs "office employees" at these facilities whose job duties largely require them to be physically present at their respective office location during the workday. Unified Door also employs "non-office" employees (like Plaintiffs) at these facilities whose job duties largely require them to be away from the office location during the workday.

Defendants maintained and continue to maintain an illegal policy and practice of deducting 30 minutes per workday from non-office employees' work hours even if the employee did not take a 30-minute unpaid break for lunch at all Unified Door facilities, not just the Des Moines facility. Defs.' Answer ¶ 28–31. Defendant Unified Door maintains an employee handbook that describes various employee benefits and personnel policies. Defs.' Answer ¶ 28. That employee handbook "establishes policies, procedures, benefits, and working conditions that will be followed by all employees" of Defendant Unified Door, regardless of location. Ex. B at 5 (emphasis added). The employee handbook states that meal periods for office employees are "established based on work requirements in each office." Ex. B at 37. The handbook recognizes that office staffing needs at each location may differ, stating, "[s]upervisors should make sure that each location is adequately staffed and that someone with authority to resolve minor problems is available at all times." Ex. B at 37.

However, the handbook policy for break time for non-office employees is applicable at all locations. The handbook states, "[n]on-office employees are allowed a 30 minute unpaid break…[t]his break time will be deducted from your work hours on a daily basis whether you use it or not." Ex. B at 37. This policy is not specific to certain Unified Door locations and does not contain any of the location-specific language like the break policy for office employees. Ex. B at 37.

Thus, when Plaintiffs and other non-office employees at all Unified Door locations do not take lunch, 30 minutes of wages are still deducted from their paycheck each day and are not included in calculating their overtime hours, even if they have informed Defendants that they did not take a lunch by checking the "NO LUNCH" box on their electronic tablet. Plaintiffs witnessed this policy in practice on their personal paychecks, noting that they would see that 30 minute breaks were deducted for each workday from their paychecks even when they had not taken 30 minute breaks on those days. Vanover Aff. ¶ 5; Roberts Aff. ¶ 5.

III.   ARGUMENT

A. THE COURT MAY ISSUE NOTICE UPON A MODEST FACTUAL SHOWING THAT SIMILARLY SITUATED CLASS MEMBERS EXIST.

Under the FLSA, a worker may bring an action either on an individual basis or on a collective basis for herself "and other employees similarly situated." 29 U.S.C. § 216(b). To provide other similarly situated employees with the opportunity to opt in, "the Court has discretion to facilitate the opt-in process and authorize court-supervised notice to potential opt-in plaintiffs." Frazier v. PJ Iowa, L.C., 337 F.Supp.3d 848, 861 (S.D. Iowa 2018) (citing Saleen v. Waste Mgmt., 649 F.Supp.2d 937, 939 (D. Minn. 2009)). Notice is intended to establish the contours of the action and to further the broad remedial purpose of the FLSA. See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 171 (1989) (discussing importance of early notice in collective actions in order to "ascertain[] the contours of the action at the outset").

"Courts in this Circuit typically engage in a two-stage analysis when a plaintiff seeks to certify a FLSA collective action pursuant to § 216(b)." Tegtmeier v. PJ Iowa, L.C., 208 F. Supp. 3d 1012, 1018 (S.D. Iowa 2016) (citing Putman v. Galaxy 1 Mktg., Inc., 276 F.R.D. 264, 269 (S.D. Iowa 2011)). "In the [conditional certification] stage, also known as the 'notice stage,' the Court considers at an early point in the litigation whether to conditionally certify the opt-in

collective action." Tegtmeier, 208 F. Supp. 3d at 1018 (citing Robinson v. Tyson Foods, Inc., 254 F.R.D. 97, 99 (S.D. Iowa 2008)). "If the plaintiffs satisfy this first burden, the court conditionally certifies the class, and potential class members are given notice and the opportunity to opt-in." Littlefield v. Dealer Warranty Servs., LLC, 679 F. Supp. 2d 1014, 1017 (E.D. Mo. 2010) (citing Schleipfer v. Mitek Corp., 2007 WL 2485007, at *3 (E.D. Mo. Aug. 29, 2007)). "[A]t the second step of the process, the defendant may move, and the court may determine, to decertify the class." Perrin v. Papa John's Intern., Inc., 2011 WL 4089251, at *3 (E.D. Mo. Sept 14, 2011) (citing Kautsch v. Premier Communications, 504 F. Supp. 2d 685, 688 (W.D. Mo. 2007)). The decertification analysis occurs "after the close of discovery, on a fully developed record that permits the court to make a factual determination as to whether the members of the conditionally certified class are indeed similarly situated." Perrin, 2011 WL 4089251, at *3 (citing Davis v. NovaStar Mortg., Inc., 408 F. Supp. 2d 811, 815 (W.D. Mo. 2005)).

To establish that conditional certification is appropriate, Plaintiffs need only provide "some factual basis from which the court can determine if similarly situated potential plaintiffs exist." Robinson, 254 F.R.D. at 99 (quoting Dietrich v. Liberty Square, L.L.C., 230 F.R.D. 574, 577 (N.D. Iowa 2005)). Plaintiffs can satisfy this requirement "'by making a modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law.'" Fast v. Applebee's Int'l, Inc., 243 F.R.D. 360, 363 (W.D. Mo. 2007) (quoting Realite v. Ark Rests. Corp., 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998)); see also Bouaphakeo v. Tyson Foods, Inc., 765 F.3d 791, 795 (8th Cir. 2014). Plaintiffs' evidentiary burden at this early stage is lenient; as a result, conditional certification is usually granted. Fast, 243 F.R.D. at 362–63.

Importantly, the Court does not evaluate the merits of the case as part of the conditional certification inquiry. See Andersen v. Wells Fargo Fin., Inc., 2012 WL 12871958, at *3 (S.D. Iowa Feb. 6, 2012 (quoting West v. Border Foods, Inc., 2006 WL 1892527, at *3 (D. Minn. June 12, 2006)) ("The Court need not 'make any findings of facts with respect to contradictory evidence presented by the parties nor does th[e] court need to make any credibility determinations with respect to the evidence presented'"); Pivonka v. Bd. of Cty. Comm'rs of Johnson Cty., Kansas, 2005 WL 1799208, *2 (D. Kan. 2005) (holding that disparate factual and employment settings are reviewed during "second stage" analysis, not during "notice stage"). Merits determinations are reserved for later in litigation; but in the meantime, potential opt-ins should be apprised of their right to join in this action before their claims expire. See Bouapheko, 564 F.Supp.2d at 893 ("[W]hether at the first step or second step in the § 216(b) collective action certification process, plaintiffs need not prove the merits of their claim.").

B. THE COURT SHOULD AUTHORIZE NOTICE BECAUSE PLAINTIFFS HAVE MADE A SUFFICIENT SHOWING THAT SIMILARLY SITUATED COLLECTIVE ACTION MEMBERS EXIST.

There can be no doubt here that a group of similarly situated individuals work for Defendants pursuant to a common policy or plan whereby they are not paid for 30 minutes of work per day even when they did not take a 30 minute lunch break and are not paid correctly for hours actually worked over 40 per week. Defendants' stated policy is to deduct 30 minutes each day from non-office employee work hours whether the employee took that 30 minute break or not. Ex. B at 37; Defs.' Answer ¶ 29–31; Vanover Aff. ¶ 5; Roberts Aff. ¶ 5.

Where the Plaintiff has provided "some factual basis from which the court can determine if similarly situated potential plaintiffs exist," the lenient standard for conditional certification is met. Campbell v. Amana Co., L.P., 2001 WL 34152094, at *2 (N.D. Iowa Jan. 4, 2001) (quoting

Jackson v. New York Tel. Co., 163 F.R.D. 429, 431 (S.D.N.Y. 1995)). Plaintiff meets this standard by showing that potential plaintiffs seem to have been subject to the same policy. Tegtmeier, 208 F. Supp. 3d at 1019 (granting conditional certification with only one named plaintiff and no putative plaintiff opt-in forms or affidavits).

The evidence produced by Plaintiffs here in support of their motion –the affidavits of Shane Vanover and Austen Roberts, signed consents from three putative class members, Defendants' stated handbook policy of deducting 30 minutes of work time each day applicable to all non-office employees, and Defendants' admissions in its' Answer – are easily sufficient to establish that Defendants classified employees as "non-office" employees at all locations, deducted work hours from their paychecks, and did not include those deducted hours for calculating overtime. "In a typical case, the court decides whether to conditionally certify a class based solely on the plaintiffs' affidavits."[1] Littlefield, 679 F. Supp. 2d at 1017 (citing Huang v. Gateway Hotel Holdings, 248 F.R.D. 225, 227 (E.D. Mo. 2008)). See also Davis, 408 F. Supp. 2d at 816 ("Signed declarations provide appropriate support for [conditional certification] motions"). Plaintiffs have produced much more than that here.

Conditional certification is further appropriate when Plaintiffs demonstrate that "other similarly situated individuals desire to opt in to the litigation."[2] Tegtmeier v. PJ Iowa, L.C., 208

---

[1] Indeed, courts have even routinely found that plaintiffs had met their burden under § 216(b) where the common policy or practice was not in writing. See, e.g., Robinson, 254 F.R.D. at 102 ("The court finds that the plaintiffs have met their burden, at this stage, of demonstrating a "single decision, policy or plan," in that most production employees are paid on a "gang time" basis, wear some kind of PPE, and use knives in their work."); Fast, 243 F.R.D. at 364 ("Plaintiffs have submitted sufficient evidence to show that Applebees maintains and encourages a practice that results in tipped employees performing non-tip producing tasks for less than minimum wage."); Burch v. Qwest Commc'ns Int'l, Inc., 500 F. Supp. 2d 1181, 1190 (D. Minn. 2007) (conditional certification appropriate where "Plaintiffs have established a colorable basis that they are victims of a single, nationwide policy by Qwest to illegally withhold overtime pay."). Conditional certification is even more appropriate here because the common policy or practice is spelled out explicitly in Defendants' own materials.

[2] However, this showing is not required. See Tegtmeier, 208 F. Supp. 3d at 1019 (S.D. Iowa 2016) (granting conditional certification with only one named plaintiff and no putative plaintiff opt-in forms or affidavits); Fuelberth v. Godfather's Pizza, Inc., 2023 WL 3024617, at *2 (D. Neb. Apr. 20, 2023) (granting conditional certification with

F. Supp. 3d 1012, 1019 (S.D. Iowa 2016) (quoting Parker v. Rowland Exp., Inc., 492 F.Supp.2d 1159, 1165 (D. Minn. 2007)). See also Shipley v. City of Bettendorf, Iowa, 2023 WL 3680115, at *4 (S.D. Iowa Feb. 2, 2023) (granting conditional certification where Plaintiffs submitted affidavits from putative class members and an excerpt from the employee handbook outlining overtime and compensatory time policies). Plaintiffs have filed statements from three putative class members demonstrating desire to opt-in to the litigation and asserting that they believe they were also subject to Defendants' unlawful policy or plan as Plaintiffs. Plaintiffs have amply met the conditional certification standard here.

Furthermore, it is proper for the Court to approve notice to non-office employees at all of Defendants' locations. Defendant Unified Door admits that it operates multiple facilities in multiple locations with one President. Defs.' Answer ¶ 7–11. Defendants plainly followed a uniform policy of deducting 30 minutes of break time from non-office employees' work hours "on a daily basis whether [they] use it or not." Ex. B at 37. That policy is applicable to all Unified Door non-office employees. Thus, notice to all of Defendants' non-office employees at all locations is warranted.[3] See, e.g., Oxford v. Broadband Communications of Iowa, No. 4:17-

---

one declaration from a single named plaintiff); Norvell v. Dedman's Sanitation, 2023 WL 2456056, at *3 (E.D. Ark. Mar. 10, 2023) (granting conditional certification based on the declaration of a single named plaintiff); Looney v. Weco, Inc., 2022 WL 4292384, at *5 (E.D. Ark. Sept. 16, 2022) ("the decision to certify a plaintiff's proposed collective may be based solely on such a declaration so long as the personal knowledge presents a 'colorable basis for this claim that the putative class members were the victims of a single decision, policy, or plan.'" (quoting Schmaltz v. O'Reilly Auto. Stores, Inc., 2013 WL 943752, at *5 (E.D. Mo. Mar. 11, 2013)); Doss v. Custom Auto Serv. Inc., 2020 WL 5770883, at *3 (E.D. Ark. Sept. 28, 2020) ("Based on the limited record before it, the Court determines that Mr. Doss's declaration, the allegations in his complaint, and defendants' concession suffice to show that the members of the proposed collective were alleged victims of a purported common policy."); Bolden v. Callahan, 2020 WL 5774113, at *3 (E.D. Ark. Sept. 28, 2020) (granting condition certification based on the declaration of a single named plaintiff).

[3] Moreover, courts have routinely granted conditional certification across multiple locations, even where the named plaintiffs worked at only one site. See, e.g., Falcon v. Starbucks Corp., 580 F. Supp. 2d 528, 536 (S.D. Tex. 2008); Rawls v. Augustine Home Health Care, Inc., 244 F.R.D. 298, 300 (D. Md. 2007); Williams v. King Bee Delivery, LLC, 2017 WL 987452 (E.D. Ky. Mar. 14, 2017) (conditionally certifying class of delivery drivers across three states even though plaintiffs worked only in Kentucky); Luiken v. Domino's Pizza, LLC, 2010 WL 2545875, *2-3 (D. Minn. June 21, 2010) (conditionally certifying a nationwide collective action consisting of all Domino's delivery drivers in all but two states).

cv-00178-SMR (S.D. Iowa Dec. 19, 2017) (ECF No. 47 at p. 17) (granting nationwide notice despite plaintiffs' production of declarations from plaintiffs who worked at three of defendants' locations) (attached as Ex. K); Kelly v. Bluegreen Corp., 256 F.R.D. 626, 631 (W.D. Wis. 2009) (granting nationwide conditional certification) ("Where an apparent company-wide policy is behind the alleged FLSA violations, the plaintiff seeking certification for a company-wide class action should not be required to collect specific violations from each location or from each state before seeking authorization to provide notice to employees from all locations."); Putman v. Galaxy 1 Mktg., Inc., 276 F.R.D. 264, 274–75 (S.D. Iowa 2011) ("The fact that Area Managers across the different locations may have different management styles or policies is not fatal to Plaintiffs' motion. Galaxy does not refute that, despite different Area Managers, there was a common practice or policy in treating satellite installation technicians as independent contractors instead of employees.").

C. EVEN THOUGH QUESTIONS REGARDING THE MERITS ARE IRRELEVANT AT THIS STAGE, PLAINTIFFS HAVE MADE SUFFICIENT PRELIMINARY SHOWING THAT THEY WERE NOT PAID FOR WORKING TIME IN VIOLATION OF THE FLSA.

Defendants may argue that conditional certification should not be granted because its common policy of deducting 30 minutes per day off employee work time for a break whether the employee took a break or not does not violate the FLSA. As this Court has repeatedly held, however, such an argument would put the cart before the horse by improperly requiring a ruling on the merits, which are irrelevant at the conditional certification stage. Putman, 276 F.R.D. at 274 ("Making a determination, at this time, of whether the satellite installation technicians were independent contractors or employees pursuant to the 'economic realities' test, would . . . improperly delve into the merits of Plaintiffs' claim."); Kautsch, 504 F. Supp. 2d at 690 (citing Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 262 (S.D.N.Y. 1997)) ("at the notice stage, the

Court does not reach the merits of Plaintiffs' claims."). Indeed, in recently issuing notice pursuant to § 216(b) of the FLSA, this Court rejected the defendants' arguments that it should first reach the question of whether employees were properly classified as independent contractors, because doing so at this stage would improperly reach the merits. See Oxford, No. 4:17-cv-00178-SMR (ECF No. 47 at p. 15) ("[t]he weight of authority favors the position that conditional certification may be ordered before the employment relationship should be clarified, particularly in misclassification cases.") (quoting Benion v. Lecom, Inc., 2016 WL 2801562, at *11 (E.D. Mich. May 13, 2016)). What matters for purposes of conditional certification is that all of Defendants' non-office employees have 30 minutes of work time deducted from their work hours whether they took a 30 minute break that day or not. Whether the practice violates the FLSA will produce a result that is common for all of the similarly situated employees. Accordingly, questions regarding whether Defendants' work time deduction policy violates the FLSA are not relevant at this stage.

  Moreover, the facts here plainly support a claim that Defendants have violated the FLSA by failing to pay Plaintiffs for both straight time and overtime hours worked. Under the FLSA an employer is required to pay employees a minimum wage for all hours worked and overtime at one and a half times the employee's regular rate for all hours worked over 40 in a week. 29 U.S.C. § 206–207. Employers are required to pay employees for meal periods if the employee spends their meal period "predominantly for the benefit of the employer." Henson v. Pulaski Cnty. Sheriff Dep't, 6 F.3d 531, 534 (8th Cir. 1993). If an employee works through their lunch period they must be compensated for that time and it must be considered time worked for overtime purposes. Id. (citing Mumbower v. Callicott, 526 F.2d 1183, 1185 (8th Cir. 1975)) ("[a] switchboard operator attempting to sneak bites of lunch between answering phone calls clearly

required under any standard that the switchboard operator be compensated for the time that the employer labelled as her lunch period."). Similarly, if an employee works through their lunch period that work time must be factored in for determining overtime compensation owed to that employee. Haviland v. Cath. Health Initiatives-Iowa, Corp., 729 F. Supp. 2d 1038, 1051 (S.D. Iowa 2010).

Here, Plaintiffs simply do not take a lunch break on certain workdays and inform the employer of such by checking the "NO LUNCH" box on their employer-provided electronic tablets. Vanover Aff. ¶ 4; Roberts Aff. ¶ 4. The employer used the tablet data to determine how many hours Plaintiffs worked. Defs.' Answer ¶ 19; 27. The employer maintained a policy of deducting 30 minutes of break time from non-office employee work hours "on a daily basis whether you use it or not." Ex. B at 37. It would seem that when an employee checked the "NO LUNCH" box that was included in the tablet data the employer used to calculate that employee's paycheck, the employer simply ignored that information and deducted 30 minutes from that employees' work hours for the day anyway. Thus, Defendants' uniform policy for the deduction of work time results in a violation of the FLSA for all of the non-office employees who do not take a 30 minute lunch break and work more than 40 hours in a week.

D. PLAINTIFFS' PROPOSED FORM AND METHODS OF NOTICE ARE PROPER.

Congress' purpose in authorizing § 216(b) collective actions was to avoid multiple lawsuits where numerous employees have been harmed by a common violation of the FLSA. See Hoffman-La Roche, 493 U.S. at 170 (describing benefits of collective action under the analogous Age Discrimination in Employment Act). As the Supreme Court has noted, "[t]hese benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." Id.

Court-authorized notice also prevents "misleading communication" to class members about the nature of the pending case. Id. at 172.

In the instant case, Plaintiffs' proposal for court-approved Notice to potential opt-in plaintiffs (Exhibit H) meets the timeliness, accuracy and informational requirements established by the Supreme Court in Hoffman-La Roche. The proposed Notice describes the lawsuit, informs individuals who have worked as consultants for Defendants and were classified as independent contractors of their opportunity to "opt-in," instructs them how to opt-in, and notifies them of the effect of their decision to opt-in.

In addition, notice should be issued to all individuals whom Defendants classified as non-office employees within the last three years, which is the FLSA statute of limitations for intentional violations.[4]

Plaintiffs, therefore, seek leave to send the Notice and Opt-In Consent Form, attached as Exhibits H and I, respectively, by First Class Mail and e-mail[5] to all individuals who Defendants classified as non-office and non-exempt employees during the past three years. This request is

---

[4] See Oxford, No. 4:17-cv-00178 (ECF No. 47 at p. 19) (approving use of three-year statute of limitations for FLSA notice); Littlefield, 679 F. Supp. 2d at 1019 (noting that judicial economy is served by conditionally certifying a larger collective and applying three-year statute of limitations); Burch, 500 F. Supp. 2d at 1191 ("Exclusion of potential plaintiffs based on application of the two-year statute of limitations would be premature at this juncture."); see also Benion, 2016 WL 2801562 at *11 (quoting Colley v. Scherzinger Corp., 2016 WL 1388853, *4 (S.D. Ohio Apr. 6, 2016)) ("It is appropriate to allow a three-year look-back period in the notice where '[t]he absence of willful conduct is not established as a matter of law by the pleadings.'").

[5] E-mail is increasingly recognized by courts as an effective method for providing notice. See, e.g., Oxford, No. 4:17-cv-00178-SMR (ECF No. 47 at p. 19) (ordering production of collective action members' email addresses); Syed v. M-I, L.L.C., 2014 WL 6685966, at *8 (E.D. Cal. Nov. 26, 2014) (finding that "email is an increasingly important means of contact" and ordering that notice be sent via hard copy mail and email to all potential opt-ins); Guy v. Casal Inst. of Nevada, LLC, 2014 WL 1899006, at *7 (D. Nev. May 12, 2014), ("email is an efficient, reasonable, and low cost supplemental form of notice"); In re Deloitte & Touche, LLP Overtime Litig., 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012) (granting request for notice by e-mail) ("communication through email is the norm"); see also Vasto v. Credico (USA)LLC, 2016 WL 2658172 at *16 (S.D.N.Y May 5, 2016) (granting request for notice by e-mail); Snively v. Peak Pressure Control, LLC, 174 F. Supp. 3d 953, 962 (W.D. Tex. 2016) (same); Butler v. DirectSAT USA, LLC, 876 F. Supp. 2d, 560, 575 (D. Md. 2012) (same); Beasley v. Custom Communications, Inc., 2016 WL 5468255, at *6 (E.D.N.C. Sept. 28, 2016) (granting request for e-mail addresses).

consistent with established practice under the FLSA. See, e.g., Hoffman-LaRoche, 493 U.S. at 170; see also Chin v. Tile Shop, LLC, 57 F. Supp. 3d 1075, 1095 (D. Minn. 2014).

Additionally, Plaintiffs also request permission to send text message notifications to Defendants' non-exempt workers with a link to a website containing the Notice form. This practice has been approved by a number of courts. See, e.g., Avendano et al. v. Averus, Inc. et al., No. 14-cv-01614, (D. Colo. Oct. 25, 2016) ("Given the undisputed transient nature of the class and Plaintiff's assertion that text messaging is the most reliable form of communication, the Court finds that notification by text message is likely to be a viable and efficient means of notifying many prospective members of this collective action."); Vasto, 2016 WL 2658172, at *16 ("[C]ourts in this District have permitted email and text message distribution where, as here, the nature of the employer's business facilitated a high turnover rate among employees."); Eley v. Stadium Group, LLC, 2015 WL 5611331, *3 (D.D.C. Sept. 22, 2015) (approving distribution of FLSA collective action notices via mail, email and text message, holding that such means of distribution are "in line with what has been approved in other FLSA collective actions.") (citing Bhumithanarn v. 22 Noodle Market Corp., 2015 WL 4240985, *5 (S.D.N.Y. July 13, 2015) (holding that in a case involving a "transient" population, "notice via text message is likely to be a viable and efficient means of communicating with many prospective members of this collective action.")).

Finally, Plaintiffs request permission to include an electronic link in the notice and opt-in form to an electronic signature software that would allowing recipients to electronically sign the opt-in form. The link proposed by Plaintiff is a convenient method for collective members to both view the language of the Notice and to fill out the opt-in form. The point of sending Notice to Class Members is to allow for recipients to join the collective action should they so choose, and

the convenience of allowing for electronic signatures would only further this goal. The only content at the link would be the approved class notice and the approved opt-in form. It would simply be an electronic version of the hard-copy notice and opt-in form that would be mailed to potential class members. This type of link is routinely used in collective actions such as this and should be non-controversial.

Courts in the Eighth Circuit have routinely authorized the use of electronic signatures for opt-in plaintiffs to execute their consent to join a collective actions. In Adkinson, the court explained that an electronic opt-in form is appropriate in a collective action because the FLSA only requires that opt-in consent be "in writing," it does not require a wet ink signature. Adkinson v. Tiger Eye Pizza, LLC, 2019 WL 5213957, at *9 (W.D. Ark. Oct. 16, 2019) (quoting 29 U.S.C. § 216(b)). The court noted "[i]ndeed, individuals today routinely enter into any number of agreements electronically using various websites, software packages, and mobile phone applications." Id.

Multiple courts in the Eighth Circuit have authorized electronic opt-in forms in FLSA matters for these same reasons. See Harris v. Chipotle Mexican Grill, Inc., 49 F. Supp. 3d 564, 583 (D. Minn. 2014) (granting leave for opt-in plaintiffs to sign consents to join the action electronically); Friedly v. Union Bank & Tr. Co., 2021 WL 5773680, at *7 (D. Neb. Nov. 19, 2021), report and recommendation adopted, 2021 WL 5771278 (D. Neb. Dec. 6, 2021) (granting leave for opt-in plaintiffs to submit consents to join the collective action via Docusign); Holmes v. AmerCable Co., 2025 WL 978599, at *8 (W.D. Ark. Mar. 31, 2025) (granting leave for opt-in plaintiffs to sign consents to join the action electronically); Turner v. Concentrix Servs., Inc., 2020 WL 544705, at *8 (W.D. Ark. Feb. 3, 2020) (granting leave for opt-in plaintiffs to sign consents to join collective action via RightSignature). Thus, Plaintiffs request the Court authorize

use of an electronic link where potential collective action members may view the Notice and sign the Consent electronically.

To that end, Plaintiffs request that the Court order Defendants to produce the names, last known mailing and e-mail addresses, and telephone numbers for all collective action members. Courts granting conditional certification routinely order the defendant to produce this information to facilitate notice to the class.[6]

Once Defendants have produced collective action members' names and contact information, and notices have been mailed, collective action members should have a 90-day window to return a signed consent form. "Notice periods may vary, but numerous courts around the country have authorized ninety-day opt-in periods for collective actions." Butler, 876 F. Supp. 2d at 575; Murray v. Silver Dollar Cabaret, Inc., 2017 WL 514323, at *6 (W.D. Ark. Feb. 8, 2017) ("The Court finds that a 90-day opt-in period is sufficient and will better serve the interests of efficiently facilitating notice without further delaying this litigation because of the transient nature of [the collective action members].").[7] Indeed, this Court recently agreed in

---

[6] Oxford, No. 4:17-cv-00178 (ECF No. 47); Harris v. Chipotle Mexican Grill, Inc., 49 F. Supp. 3d 564, 582 (D. Minn. 2014) (ordering defendant to provide name, last known home or residence address, and personal email address for each potential opt-in plaintiff); Custom Commc'ns, Inc, 2016 WL 5468255, at *6 (ordering production of names, dates of employment, e-mail addresses, telephone numbers, and last-known addresses); Curtis v. Scholarship Storage Inc., 2015 WL 1241365, at *5 (D. Me. Mar. 18, 2015) (granting "Plaintiffs' request for the names, addresses, telephone numbers, and email addresses of all potential collective action members."); Poreda v. Boise Cascase, L.L.C., 532 F. Supp. 2d 232, 242 (D. Mass. 2008) ("Defendant shall provide Plaintiff with the names, addresses, email addresses and telephone numbers of all employees who potentially could be members of the FLSA Class electronically within twenty days of this order.").

[7] See also Benion, 2016 WL 2801562 at *11 (citing Hoffmann-La Roche, 493 U.S. at 170) ("One of the purposes of judicially supervised notice is to protect the claims of potential plaintiffs for unpaid overtime compensation . . . That interest, of course, must be balanced with expeditious and prudent case management. The 90-day notice period proposed by the plaintiffs properly strikes that balance."); Club Cabaret, Inc., 2015 WL 6444793 at *6 ("Courts routinely approve a 90–day opt-in period, and the Defendant provides no good reasons not to do so here."); Harris v. Performance Transp., LLC, 2015 WL 1257404, at *6 (M.D. Fla. Mar. 18, 2015) ("courts routinely grant ninety-day opt-in periods."); Wlotkowski v. Michigan Bell Tel. Co., 267 F.R.D. 213, 220 (E.D. Mich. 2010) (approving a 90-day notice period); Pereira v. Foot Locker, Inc., 261 F.R.D. 60, 68–69 (E.D. Pa. 2009) (same); Lima v. Int'l Catastrophe Sols., Inc., 493 F. Supp. 2d 793, 804 (E.D. La. 2007) ("The Court believes that an opt-in period of ninety days is adequate.").

approving a 90-day opt-in period in another collective action seeking overtime pay. Oxford, No. 4:17-cv-00178 (ECF No. 47 at p. 19) ("the Court finds that allowing a ninety-day window for potential class members to opt in is appropriate in this case.").

The Court should also authorize Plaintiffs to mail, e-mail, or text a reminder to all collective action members who received the notice but have not yet responded to opt in to this matter within forty-five (45) days of the first issuance of the notice. Courts regularly authorize reminder notices to increase the chance that workers will be informed of their rights. See Morris v. Lettire Const., Corp., 896 F. Supp. 2d 265, 275 (S.D.N.Y. 2012) ("Given that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in, we find that a reminder notice is appropriate."); Sanchez v. Sephora USA, Inc., 2012 WL 2945753, *6 (N.D. Cal. July 18, 2012) ("[C]ourts have recognized that a second notice or reminder is appropriate in an FLSA action since the individual is not part of the class unless he or she opts-in.") (internal citations omitted). This is particularly appropriate "in an FLSA action since the individual is not part of the class unless he or she opts-in." Id. Plaintiffs will bear the cost of notice, as well as the reminder mailing, and it will not change the end of the notice period.

## IV. CONCLUSION

For the reasons previously stated Plaintiffs have shown that notice is appropriate at this stage of the case. Accordingly, Plaintiffs respectfully request that the Court:

1. Grant the Motion and enter the proposed order (attached as Exhibit J);
2. Conditionally certify this action as a collective action under 29 U.S.C. § 216(b);

3. Order that Notice be issued to all individuals who worked for Defendants at all locations since April 10, 2022, whom Defendants classified as "non-office" employees and as "non-exempt" for overtime purposes.

4. Order that Defendants produce a list of names, last-known mailing and e-mail addresses, and telephone numbers for all individuals who worked for Defendants at all locations since April 10, 2022, whom Defendants classified as "non-office" employees and as "non-exempt" for overtime purposes.

*/s/ Emily Schott Hood*
NATHAN WILLEMS, AT0009260
EMILY SCHOTT HOOD, AT0014444
RUSH & NICHOLSON, P.L.C.
P.O. Box 637
Cedar Rapids, IA 52406-0637
Telephone (319) 363-5209
Facsimile (319) 363-6664
nate@rushnicholson.com
emily@rushnicholson.com
ATTORNEYS FOR PLAINTIFFS

| Copy to:<br><br>Thomas Joensen<br>Gordon Rees Scully Mansukhani<br>tjoensen@grsm.com | CERTIFICATE OF SERVICE<br><br>I certify that this document was served upon counsel of record for each party to the action on by:<br>☐ U.S. Mail ☐ FAX<br>☐ Hand delivered ☐ Overnight courier<br>☐ Certified mail ☐ Other (Email)<br>X Electronically via EDMS for EDMS registrants<br><br>Signature:/s/ Stephanie M. Collingwood |
|---|---|